IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SADYOULI BEDJAN,<br><br>                Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,[*/] Commissioner of Social Security,<br><br>                Defendant. | No. 1:05-cv-00375-JKS<br><br>MEMORANDUM DECISION |

       On two separate occasions Sadyouli Bedjan applied for Supplemental Security Income benefits under Title II and XVI of the Social Security Act. 42 U.S.C. §§ 401-433, 1381-82c. Bedjan's initial application was denied. That determination was not appealed. Subsequently, Bedjan filed a second application which the Administrative Law Judge (ALJ) granted in part and denied in part. The ALJ found that Bedjan had a new vision impairment since her last unsuccessful application for benefits and that her earlier complaints—diabetes mellitus and hypertension—have progressively worsened since the prior decision. The ALJ therefore declined to apply *res judicata* to the instant petition. On review *de novo*, the ALJ concluded that Bedjan had a severe impairment, or combination of impairments, but at all times prior to December 22, 2001, she retained the residual functional capacity to work.

       Thereafter, upon attaining the age of 54½ years she became a person of "advanced age," which, combined with her residual functional capacity, rendered her disabled and entitled to benefits. This case, therefore, is limited to Bedjan's claim for benefits prior to December 22, 2001. Bedjan seeks review of the decision denying her benefits at the earlier time. This Court has jurisdiction for judicial review pursuant to 42 U.S.C. § 405(g).

---

      [*/] Michael J. Astrue is substituted for his predecessor Jo Anne Barnhart as Commissioner of the Social Security Administration. FED. R. CIV. P. 25(d)(1).

DISCUSSION

The district court may disturb the final decision of the SSA only if "it is not supported by substantial evidence or if it is based on legal error." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The Court's review must "consider the record as a whole," both that which supports as well as that which detracts from the Secretary's conclusion. *Desrosiers v. Sec. of Health and Hum. Serv.*, 846 F.2d 573, 576 (9th Cir. 1988). Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d at 599.

The law —20 CFR § 404.1505—defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which is expected to result in death or a continuous duration of at least 12 months. The impairment must be severe and prevent the claimant from 1) doing her past relevant work (*see* § 404.1560(b)) and 2) or any other substantial gainful work that exists in the national economy.

Disability claims are evaluated using a five-step sequential analysis. 20 C.F.R. § 404.1520. In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, App. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the residual functional capacity ("RFC")—§ 404.1545— to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The claimant carries the initial burden of proving a disability in steps one through four of the analysis. *See Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work. *See id*.

In this case the ALJ found at step 1 that Bedjan had not engaged in substantial gainful employment during the period in issue. At step 2 the ALJ found that Bedjan did have a medically severe impairment or combination of impairments but at step 3 that none of her impairments viewed in isolation or together meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulation No. 4. Moving to step 4, the ALJ concluded that Bedjan could not perform her past work as a nurse's aide. The ALJ therefore proceeded to step 5 to determine whether the claimant has the residual functional capacity to perform any other substantial gainful activity in the national economy. The ALJ found that Bedjan could perform substantial gainful activity in the national economy. Specifically, the ALJ found: At all times before December 22, 2001, the claimant retained the residual functional capacity to perform light work with limited depth perception. She could not perform work requiring reading fine print or working with small objects. She could only perform unskilled work. The ALJ continued, "Although the claimant was unable to perform the full range of light work, she was capable of making an adjustment to work that exists in significant numbers in the national economy, including jobs of cleaner and cafeteria worker." The ALJ concluded, however, that when Bedjan's condition was considered together with her advancing age she was disabled after December 22, 2001.[1]

---

[1] The SSA considers a person 55 years and older of "advanced age," a vocational factor. This age limit is not applied mechanically and therefore since Bedjan was within a few months of reaching the age of 55, a new age category—54½ years old—the ALJ treated her as if she was 55. *See* 20 CFR § 404.1563 and § 416.963. A person of advanced age is considered to be significantly hindered in her ability to adjust to other work. § 404.1563(e). Bedjan had a severe impairment which limited her to sedentary or light work, and as a result upon attaining age 55, it was presumed that she could not make the adjustment to other work. Section 404.1568(d)(4). At first consideration the question arises if she was disabled after December 22, 2001, and her condition had not changed, why wasn't she disabled before that date. The answer is that she was "presumed" disabled after that date but not before.

For the following reasons, the Court concludes that ALJ erred in determining that Bedjan was not disabled prior to December 21, 2001.

The ALJ rejected the lay testimony of Bedjan and her daughter regarding the extent of Bedjan's impairment.  This testimony focused on Bedjan's difficulty in seeing.  The ALJ relied upon the report of an Ophthalmologist who noted that Bedjan had cataract surgery with an intraocular lens implant in her left eye.  Her vision is corrected to 20/25 in her left eye but only 20/200 in her right eye.  He noted that she will eventually need surgery in her right eye.  Her visual fields are within normal limits.  The ALJ found this report inconsistent with Bedjan's testimony and that of her daughter regarding Bedjan's severe visual impairments.  He noted that Bedjan had not discussed these severe impairments with the Ophthalmologist which detracted from Bedjan's credibility and, since her daughter relied in part upon her mother and in part on her observations of her mother, detracted from the daughter's testimony as well.  Thus, the medical testimony in part contradicted this lay testimony.

The ALJ noted that Dr. Sergio Mazon, Bedjan's family practitioner, found her to be totally disabled.  The ALJ rejected this testimony.  He noted that Dr. Mazon wrote his assessments after December 22, 2001, a time when the ALJ determined Bedjan was disabled.  He also noted that Dr. Mazon appears to be acting as an advocate for Bedjan.  The ALJ concluded that the limitations described by Dr. Mazon were not documented in the treatment records, and even if they had been, they would not meet the durational requirement *i.e.* 12 months.[2]  Instead, the ALJ gave greater weight to the reports of an examining internist and a consulting physician.

The ALJ clearly erred in giving insufficient weight to the testimony of Bedjan and her daughter, as well as in giving the opinion of the examining internist and a consulting physician greater weight than that of the treating physician.  *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007).

---

[2] The durational requirement is mentioned in § 404.1505 and explained in § 404.1509.  The ALJ apparently concluded that Mazon had not seen Bedjan during the 12 months preceding December 22, 2001, and therefore could not testify that the limitations he noted had persisted during that period.  *See* § 404.1505 defining disability in terms of an inability to work for a continuous period of not less than 12 months based upon a severe impairment rendering Bedjan unable to do her past work "or any other gainful employment."  The ALJ, in reliance on the medical records, found that Bedjan was unable to do her past work for more than 12 months but that she could do other gainful employment, and that Mazon could not contradict this because he hadn't seen her during the relevant period of time.

The teachings of *Orn* are clear.  If the treating physician's opinion is well supported by medically acceptable clinical and laboratory techniques and is not inconsistent with other substantial evidence in the record, it must be given controlling weight.  *Orn*, 495 F.3d at 632, 635.  Even if the opinion of the treating physician is contradicted by another physician, it must still be given greater weight than that of an examining or consulting physician and may not be rejected without providing specific and legitimate reasons supported by substantial evidence in the record.  *Orn*, 495 F.3d at 632, 634.  The reasons articulated by the ALJ in this case do not meet that test.

First, the ALJ erred in "finding" that the report of Dr. Mazon was prepared and addressed Bedjan's condition after the December 22, 2001, date.  The report of Dr. Mazon, dated June 22, 2001, indicates that Dr. Mazon started treating Bedjan in December 1998 with the last treatment date May 4, 2001.  Second, although the conclusions of the examining and consulting physicians do not agree with Dr. Mazon as to the extent of Bedjan's disability, it does not appear from the record that they were based upon "independent clinical findings," but merely express a difference in opinion.  As such, they do not constitute "substantial evidence."  *Orn*, 495 F.3d at 632.  Third, the ALJ's "observation" that Dr. Mazon was acting as an advocate for Bedjan is mere surmise unsupported by anything in the record other than the fact Dr. Mazon's opinion was that Bedjan's degree of disability was significantly greater than the opinion of the examining and consulting physicians.  While the ALJ is correct in observing that the durational requirement does not appear to be expressly satisfied by Dr. Mazon's report, that is not, standing alone, fatal.  Nothing in the form furnished by the SSA and completed by Dr. Mazon specifically asks the question as to when the patient first became disabled.  However, since Dr. Mazon had been treating Bedjan for more than two years, he certainly was competent to testify to that fact if the proper question were asked.  Consequently, at this point, the record is inadequate to determine the exact date prior to December 22, 2001, Bedjan became disabled within the meaning of the Social Security regulations.[3/]

---

[3/] The Court notes that, if given its proper weight, the opinion of Dr. Mazon establishes that the date was, *at the latest,* May 4, 2001, the last day that he treated Bedjan.  However, it could have been an earlier date, which is not clearly established by the record as it presently exists.

An ALJ is not required to give credence to every allegation of disabling pain or other non-exertional impediment testified to by a claimant. However, to discredit a claimant's testimony when, as in this case, a medical impairment has been established, the ALJ must provide specific, cogent reasons for the disbelief. In this case the ALJ stated two reasons for discounting the testimony of Bedjan and her daughter. First, that "no medical record supports the severe extreme visual limitations she alleges." In particular, that the record does not show that she mentioned these extreme visual limitations to the treating physicians, including the ophthalmologist. Second, the ALJ was also "reluctant to give much credence to a patient who fires her doctor because he or she does not agree with the patient."

As the Ninth Circuit observed, "[t]he primary function of medical records is to promote communications and record keeping for health care personnel—not to provide evidence for disability determinations." *Orn*, 495 F.3d at 634. The limitations described by Bedjan, her inability to read, headaches, and impaired depth perception, are commonly encountered by people with Bedjan's clinically established vision impairments. Being unremarkable, the fact that they are not documented in the medical records is, in itself, also unremarkable and an insufficient basis for rejecting or discounting the testimony of Bedjan or her daughter. In any event, the lack of such notations in Bedjan's medical records does not necessarily contradict Bedjan's testimony.

As to the second reason, the reference to the record, while it indicates that Bedjan had not tried the recommendations of the treating physician, and "it is not clear whether she wants to see him again" does not indicate she "fired" the physician, nor does it go to her credibility. Moreover, this relates to her psychological condition, *i.e.* severe depression and extreme anxiety, not her physical limitations to which she testified. Finally, there does not appear to be any clear evidence in the record that the recommended treatment would be successful. *See Orn*, 495 F.3d at 637.

The ALJ's conclusion that Bedjan was not disabled prior to December 22, 2001, was based upon the testimony of the vocational expert, using the residual functional capacity set by the ALJ, that there were jobs existing in sufficient numbers in the national economy that Bedjan could perform. In determining Bedjan's residual functional capacity prior to December 22, 2001,

the ALJ committed clear legal error, and his finding is not supported by substantial evidence. Consequently, since the vocational expert's opinion was based upon a faulty premise, that opinion does not constitute substantial evidence to support the conclusion of the ALJ.

## CONCLUSION

The Commissioner's motion for summary judgment is DENIED and Bedjan's motion for summary judgment GRANTED. The decision of the SSA is therefore REVERSED and the matter REMANDED with directions to:

1. Expand the record to the extent necessary to determine at what date prior to December 22, 2001, Bedjan became disabled within the meaning of the Social Security regulations; and

2. Reconsider its ultimate decision giving proper weight to the opinion of the treating physician and testimony of the claimant under *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007).

3. The Commissioner may permit the parties to expand the record, if a request to do so is made.

The Clerk of the Court to enter judgment accordingly.

Dated:  September 26, 2007.

s/ James K. Singleton, Jr.  
JAMES K. SINGLETON, JR.  
United States District Judge